# United States Court of Appeals for the Fifth Circuit

No. 25-10232

United States Court of Appeals
Fifth Circuit

**FILED**
July 2, 2026

Lyle W. Cayce
Clerk

Progressive Laboratories, Incorporated,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

Living Fuel, Incorporated,

*Defendant—Appellant/Cross-Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-2052

_____

Before Southwick, Willett, and Ho, *Circuit Judges*.

Per Curiam:[*]

This is a contract dispute concerning the purchase and delivery of nutritional supplements. Progressive Laboratories, Inc., filed an action for the amount due under one contract and incidental damages under another. Living Fuel, Inc., filed a counterclaim for non-delivery under the second contract. Living Fuel's counterclaim was dismissed as abandoned. After a

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-10232

bench trial, the district court concluded Living Fuel was in breach of the first contract but not the second. Both parties appealed. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Living Fuel, Inc. is a Florida company in the business of selling nutritional supplements. Progressive Laboratories, Inc. manufactures and sells nutritional supplements from its principal place of business in Texas.

In February 2022, Living Fuel began contracting with Progressive Laboratories to manufacture specialty products. During this relationship, the parties would agree to a price per unit, and Living Fuel would submit a purchase order to Progressive Laboratories. Living Fuel would then pay a 50% deposit on the full price of the order; once the order was ready to ship, Progressive Laboratories would issue a notice of shipping by sending an invoice and Living Fuel would make final payment within 30 days.

After repeated successful dealings between the parties, Living Fuel failed to tender final payment under two separate purchase orders for Super Green and Vanilla Protein products (collectively, "Super Green") resulting in an unpaid balance of $130,159.35. On October 10, 2022, Living Fuel placed a purchase order for 5,000 units of Living Fuel Super Berry Ultimate ("Super Berry"), costing $162,500. Living Fuel paid the 50% deposit on that order — $81,250. On November 22, Living Fuel's General Manager Jeff Hoening received false payment instructions and paid an imposter the full amount owed for the Super Green products: $130,159.35.[1] Laboratories delivered only $12,073.75 worth of products under the Super Berry contract, and informed Living Fuel that it would not complete the order until the Super

---

[1] The imposter seller hacked into the email of a Progressive Laboratories employee and sent wiring instructions to Hoening.

Green invoices were paid. Living Fuel did not pay, and Progressive Laboratories filed suit in Texas state court for breach of contract.

Living Fuel answered and raised two counterclaims for breach of the Super Berry contract and negligence, alleging that Progressive Laboratories breached its duty to maintain secure email communication. Thereafter, Living Fuel removed the case to the United States District Court for the Northern District of Texas. In federal court, Progressive Laboratories answered Living Fuel's counterclaims and filed an amended complaint. Living Fuel answered the amended pleading but failed to replead its counterclaims. Living Fuel then filed a motion for partial summary judgment on its breach of contract counterclaim.

On August 27, 2024, the district court entered an order denying Living Fuel's motion as moot. The court explained that because Living Fuel failed to "manifest[] *any* intent to maintain its counterclaims in the roughly four months between filing its [second answer] and moving for summary judgment," it had abandoned the claims. The court denied Living Fuel's motion for reconsideration.

After a bench trial, the district court found that Living Fuel was in a better position than Progressive Laboratories "to prevent the fraud," and held that Living Fuel breached the Super Green contract by failing to tender payment. As a result, the court awarded damages to Progressive Laboratories in the amount of $60,983.10. The amount consisted of the full price of the Super Green contract, $130,159.35, reduced by the $69,176.25 "retained" by

No. 25-10232

Progressive Laboratories under the Super Berry contract.[2]  Moreover, the court held that no installment contract existed between the parties; thus, Living Fuel's breach of the Super Green contract did not constitute a breach of the Super Berry contract.  The court entered final judgment on December 19, 2024.  Both parties timely appealed.

## DISCUSSION

When a judgment is entered after a bench trial, on appeal the district courts' "findings of fact are reviewed for clear error and legal issues are reviewed *de novo*."  *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (citation omitted).  We will apply that standard of review to Progressive Laboratories' argument that the district court erred in concluding no installment contract existed and denying incidental damages under the Super Berry contract.  Living Fuel argues that the district court, on a motion for summary judgment, erred in dismissing its counterclaims as abandoned.  We will not consider the issue of abandonment because there is an alternative basis for dismissal.  The parties agree that Texas law applies to this dispute.

### I.    Counterclaims

Living Fuel presents a  theory of contributory negligence.  The district court concluded that Living Fuel was "in the best position to prevent the fraud," making it responsible for the losses resulting from the false wiring

---

[2] The district court determined this "retained" amount by finding the difference in the $81,250 paid by Living Fuel and the $12,073.75 worth of product delivered. Although the court expressly held that Living Fuel did not breach the Super Berry contract, it did not necessarily hold that Progressive Laboratories breached the Super Berry contract by withholding delivery. Regardless, the court used the amount owed to Living Fuel under the Super Berry contract as a set-off with respect to the ultimate damage award owed to Progressive Labs.

instructions. The district court did not cite published authority for the proposition that liability is assessed in such circumstances to the party who was in the better position to avoid the fraud. It did cite an opinion from the Western District of Texas, which in turn cited a Middle District of Florida decision, which then cited the relevant Uniform Commercial Code section, 3-404. *See J.F. Nut Co. v. San Saba Pecan*, *LP*, No. A-17-CV-405, 2018 WL 7286493, at *3 (W.D. Tex. July 23, 2018) (citing *Arrow Truck Sales, Inc. v. Top Quality Truck & Equip., Inc.*, No. 8:14-cv-2052, 2015 WL 4936272, at *5–6 (M.D. Fla. Aug. 18, 2015)). The Official Comments to that UCC section state that a drawer of a check made payable to an imposter "is in the best position to avoid the fraud and thus should take the loss." U.C.C. § 3-404, cmt. 3.

Of course, proposed uniform language does not control. Statutory language does. The Texas statutory provision states this:

> With respect to an instrument to which Subsection (a) or (b) applies [involving imposters inducing issuers], if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

TEX. BUS. & COM. CODE § 3.404(d).

On *de novo* review of the legal issue, we conclude the district court was correct to evaluate liability under the terms of Section 3.404(d). Further, the district court was correct in finding that Living Fuel was in a better position than Progressive Laboratories to avoid the loss. The email to Living Fuel contained several typographical errors and "oddly phrased language." In addition, the instructions for payment were suspiciously different than those

for earlier payments.  For instance, the district court mentioned that while Progressive Laboratories "always accepted physical checks," the fraudulent seller "demanded that the payment be wired to an out-of-state bank account labeled as a 'hedge fund.'"  We agree that Living Fuel failed to exercise reasonable care.  *See* § 3.404(d).

Living Fuel also had a breach of contract claim.  The parties agreed at trial, and the agreement is reflected in the final judgment, that $69,176.25 should be deducted from Progressive Laboratories' damage amount for the money paid by Living Fuel under the Super Berry contract.  While Living Fuel sought additional damages for "lost sales," it failed to support, explain, or advocate for these damages in the district court.  The district court did not err in dismissing the counterclaims.

## II.     *Installment Contract*

"An 'installment contract' is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause 'each delivery is a separate contract' or its equivalent."  TEX. BUS. COM. CODE § 2.612(a).  Progressive Laboratories argues that its course of dealing and conduct establishes an installment contract with Living Fuel.  *See* TEX. BUS. & COM. CODE § 1.303.  We disagree and conclude — consistent with the district court — that the various agreements between the parties were separate transactions, and that the mere "expectation of future dealings does not create an installment contract."

Progressive Laboratories offers no caselaw to support that argument.  Its conclusory analysis is unpersuasive.  We "presume parties intend what the words of their contract say," not "what one side or the other alleges they intended to say but did not."  *URI, Inc. v. Kleberg County.*, 543 S.W.3d 755, 763–64 (Tex. 2018) (quotation marks omitted) (quoting *Gilberg Tex. Constr., L.P. v. Underwriters at Lloyd's Lond.*, 327 S.W.3d 118, 126–27 (Tex. 2010)).

No. 25-10232

Here, each individual purchase order referenced a definite quantity and did not contemplate future transactions. Moreover, the agreements are unambiguous. When the contractual language is clear, course of dealing need not be considered. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 313 n.3 (Tex. 2005). The district court did not err.[3]

AFFIRMED.

---

[3] Progressive Laboratories' argument concerning incidental damages also fails. We agree that incidental damages do not require the existence of an installment contract, but *all* damages require the existence of a breach. *See Spicer v. Maxus Healthcare Partners, LLC*, 616 S.W.3d 59, 108–09 (Tex. App.—Fort Worth 2020, no pet.). The district court held that Living Fuel did not breach the Super Berry contract, and we do not disturb that conclusion.